# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **SHAROC RICHARDSON**, | Case No. 2:17-cv-13396 |
| *Petitioner,* | HON. TERRENCE G. BERG |
| **v.** | **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*** |
| **SHERMAN CAMPBELL**,[1] | |
| *Respondent.* | |

This is a 28 U.S.C. § 2254 habeas action brought pro se by Sharoc Richardson, a Michigan state prisoner currently confined at Gus Harrison Correctional Facility in Adrian, Michigan. Petitioner, who is serving a sentence of ten years, nine months to thirty years, challenges his jury conviction in the Wayne County Circuit Court for voluntary manslaughter, Mich. Comp. Laws § 750.321. The petition raises ten

---

[1] The Court amends the caption to reflect the name of Petitioner's current warden. *See* Rule 2(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

claims of error. For the reasons discussed below, the Court will deny the

habeas petition. The Court will also deny a certificate of appealability.

## I. BACKGROUND

The Michigan Court of Appeals described Petitioner's case as

follows:

> This appeal arises from the stabbing death of Joyce Merritt.
> The death occurred sometime in the late evening hours of
> October 3, 2013 or the early morning hours of October 4, 2013.
> Joyce's body was found on the porch of her brother Danny
> Merritt's home by Merritt's next door neighbor, Robert
> Brown. Danny was in the hospital recovering from a leg
> amputation and had asked defendant to stay at his home.
> Danny was aware that his sister and defendant drank
> together and when they did, they argued. Brown was also
> familiar with defendant and Joyce, and their habit of arguing
> "just about every time they got to drinking." Brown awoke on
> the morning of October 4, 2013, between 5:00 a.m. and 7:00
> a.m., to find a blood trail leading from his porch toward
> Danny's house. Brown followed the trail back to Danny's
> porch, where he found Joyce's motionless body lying in a pool
> of blood.

*People v. Richardson*, No. 322195, 2016 WL 3030860, at *1 (Mich. Ct.

App. May 26, 2016).

Brown called the police. *Id*. Shortly after their arrival, Detroit

police officers observed through windows Petitioner and another man

inside Danny's home. *Id*. The officers observed "bloody trails leading into

the house" and to the couch where they had observed Petitioner. *Id*.

Police found "two black folding pocket knives" near a coffee table in the same area, as well as kitchen knife. *Id*. at *2. The knives had no blood or fingerprints on them and were not sent out for testing because they were "'too clean' to be of any real evidentiary value." *Id*. Police also collected a cellphone they found near the table and another from under Joyce's body. *Id*.

The other man police found in the home with Petitioner was Morgan Howze. *Id*. at *1. He described to police that he arrived at the home after dark, and that he and Petitioner drank whiskey for two or three hours the night before the victim was found. *Id*. at *2. After falling asleep on a couch, Howze woke to hear Petitioner "arguing with someone, but he could not tell who the other person was." *Id*. He fell back asleep. *Id*.

> Sometime later, Howze awoke again and defendant was in the living room. Defendant told Howze that he and Joyce had been arguing and then walked back out of the room. Howze did not see defendant pick anything up or notice if defendant had been carrying anything, and he did not see Joyce that night. Howze did not hear any additional arguing, and he dozed off again. After what Howze thought was another 20 minutes, defendant woke him up and told him that "Joyce was on the front porch [and] that she was dead." Howze thought defendant was joking, so he went back to sleep. He did not wake up again until the next morning, when [Police Officer]

Ortiz shouted at him through the window and he discovered that Joyce was dead.

*Id*. at *3.

Petitioner testified in his own defense:

He explained that he had known Joyce since 2009, and referred to her as "Hurricane Joyce" because the two had a heated relationship. According to defendant, Joyce had "called the police on him for no reason" on several occasions. They were not really friends, but bonded as mutual heavy drinkers. Defendant admitted that they argued frequently after they had been drinking. Defendant claimed that these fights would often end with Joyce attacking him, but he never "attacked her back."

*Id*. Petitioner described drinking all day on October 3, running into Joyce at about 4:30 p.m., and later "drinking with her after she arrived at Danny's house looking for whiskey." *Id*. at *3. He described Joyce becoming "very angry and the two argued until Joyce left . . ." *Id*.

Defendant explained that he continued to drink until after dark, went to the liquor store for more whiskey, and returned to Danny's to find Howze. There, the two men drank some more. . . Howze [was] sleeping on one couch. Defendant fell asleep on the other couch. Defendant testified that sometime later that night, he woke to find Joyce "bouncing up and down on his chest" with a knife pointed at his eye and a "spooky look on her face." Defendant told her to get off of him and tried to sit up, but she told him to "shut up" and that he could not tell her what to do in her brother's house. Defendant claimed that Joyce then cut him underneath his eye. He grabbed her right hand, the hand holding the knife, and pushed her off so that he could stand up. Defendant tried to run around the coffee

4

table to get away, but Joyce chased him with "a folded pocket knife." A struggle ensued and, at some point, defendant struck Joyce in the neck with a knife. Defendant said he had not intended to kill her, but that he had needed to act in self-defense: "[I] figured she was out to kill me[,] she had already almost blinded me." He claimed that everything was happening really fast, and that he stabbed her because he "just wanted her to stop assaulting [him]."

*Id.*

Petitioner was charged with first-degree murder, Mich. Comp. Laws § 750.316(1)(a), but the trial court granted his motion for a directed verdict on that charge. *Id.* *4. The jury was instructed on second-degree murder, Mich. Comp. Laws § 750.317, and the lesser included offense of voluntary manslaughter. *Id.* Petitioner was acquitted on the second-degree murder charge but found guilty of voluntary manslaughter. *Id.* Petitioner initially received a sentence of twelve and a half to thirty years in prison. *Id.* at *1. Following a successful motion for resentencing, he was sentenced to ten years, nine months to thirty years. *Id.*

On direct appeal, through counsel, Petitioner challenged the sufficiency of the evidence supporting his conviction, raised claims of error over jury instructions and his sentence, and argued he received ineffective assistance of counsel. Petitioner also filed a *pro se* appellate

brief,[2] in which he argued additional theories of ineffective assistance, jury instruction and sentencing errors, as well as prosecutorial misconduct.

Petitioner's conviction and sentence were affirmed; however, the court of appeals vacated and remanded the portion of his sentence which ordered restitution. *Richardson*, 2016 WL 3030860, at \*1. The Michigan Supreme Court denied Petitioner leave to appeal, *People v. Richardson*, 500 Mich. 980 (2017) (Mem), and denied Petitioner's motion for reconsideration. *People v. Richardson*, 501 Mich. 866 (2017) (Mem).

Petitioner filed this timely petition for a writ of habeas corpus on September 8, 2017, raising the following issues:

I.   INSUFFICIENT EVIDENCE TO CONVICT ON VOLUNTARY MANSLAUGHTER.

II.  TRIAL COURT ERRED IN DENYING MOTION FOR DIRECTED VERDICT OF ACQUITTAL ON THE 2ND DEGREE MURDER CHARGE.

---

[2] Michigan criminal defendants have a right to file a brief *in propria persona* for claims they seek to raise on appeal, if appointed counsel does not include those grounds in their pleadings. *See* Standard 4, Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004) (establishing minimum standards for criminal defense appellate services). Defendants are also entitled to "procedural advice and clerical assistance" from appellate counsel to ensure their pro se pleadings will be accepted by the court. *Id*.

III.   TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE CHARGE OF INVOLUNTARY MANSLAUGHTER.

IV.   INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILING TO CROSS-EXAMINE WITNESSES.

V.   THE TRIAL COURT ABUSED DISCRETION IN SENTENCING DEFENDANT AS A THIRD HABITUAL OFFENDER IN LIEU OF A SECOND HABITUAL, AND WITH DENYING DEFENDANT'S REQUEST TO SET ASIDE THE ASSESSMENT OF COURT COSTS AND ATTORNEY FEE.

VI.   TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE, PREPARE AND CALL DEFENSE WITNESSES FOR TRIAL.

VII.   PROSECUTORIAL MISCONDUCT IN OVER-CHARGING PETITIONER AND WITHHOLDING EVIDENCE FAVORABLE TO THE PETITIONER.

VIII. TRIAL COURT PREJUDICED PETITIONER, AND DENIED CONSTITUTIONAL DUE PROCESS OF LAW BY REFUSING THE JURY'S SPECIFIC REQUEST FOR FURTHER INSTRUCTIONS ON THE MANSLAUGHTER CHARGE.

IX.   SHOULD THERE BE A NOTICE OF REASONS FOR RESTITUTION, AND A TIME LIMIT TO IMPOSE RESTITUTION?

X.   SHOULD THERE BE A TIME LIMITATION FOR A DEFENDANT TO BE CLASSIFIED AND SENTENCED AS A "HABITUAL" OFFENDER?

## II.   LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established law, "as determined by the Supreme Court of the United States" at the time the state court renders its decision. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362,

8

412 (2000); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations omitted).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of a petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "[A]n 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not

9

suffice." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015); *see also Wiggins*, 539 U.S. at 520-21 ("the state court's decision must have been more than incorrect or erroneous") (citations omitted).

The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

decision" of the Supreme Court. *Id.* Section 2254(d) thus "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . ." *Id.*

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). Accordingly, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III.   DISCUSSION

### A. Insufficient evidence

Petitioner's first claim of error is that insufficient evidence supports his conviction for voluntary manslaughter. It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). However, under AEDPA, the habeas court's "'review of a state-court conviction for sufficiency of the evidence is very limited.'" *Thomas v.*

*Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). Such claims "face a high bar in habeas proceedings because they are subject to two layers of deference[.]" *Tackett v. Trierweiler*, 956 F.3d 358, 366 (6th Cir. 2020).

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Id*. at 367 (quoting *Coleman v. Johnson*, 566 U.S. 650, 651 (2012)).

In a direct appeal, the critical inquiry when reviewing a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in the original). *Jackson* requires "'explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Tackett*, 956 F.3d at 367 (quoting *Jackson*, 443 U.S. at 324, n. 16).

For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656. A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under AEDPA." *Id*.

Here, the state court of appeals performed the "explicit reference" analysis required by *Jackson*, listing the elements of second-degree murder and distinguishing them from the lesser-included offense of voluntary manslaughter. To obtain a second-degree murder conviction under Michigan law, the government must prove the following beyond a reasonable doubt: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without lawful justification or excuse for causing the death." *Richardson*, 2016 WL 3030860, at *5 (citing *People v. Smith*, 478 Mich. 64, 70 (2007)). As to voluntary manslaughter, the same elements must be shown except for the element that the defendant acted with malice.  As the state's brief points out:

> Michigan law has long defined manslaughter as "murder without malice." *People v. Mendoza*, 664 N.W.2d 685, 689 (Mich. 2003). "Murder and manslaughter are both homicides and share the element of being intentional killings. However,

the element of provocation . . . characterizes the offense of manslaughter [and] separates it from murder." *People v. Pouncey*, 437 Mich. 382, 388, 471 N.W.2d 346, 350 (1991). Second-degree murder requires proof that the defendant's act, with malice and without justification or excuse, caused the death of another. *People v. Roper*, 286 Mich. App. 77, 84, 777 N.W.2d 483 (2009). Under Michigan law, to establish voluntary manslaughter, the evidence must establish (1) that the defendant killed in the heat of passion; (2) that the passion was caused by an adequate provocation; and (3) that there was not a lapse of time during which a reasonable person could control his passions. *Williams v. Withrow*, 328 F. Supp. 2d 735, 748–49 (E.D. Mich. 2004) (citing *Pouncey*, 437 Mich. at 388). Thus the existence of provocation distinguishes manslaughter from murder. *Pouncey*, 437 Mich. at 388, 471 N.W.2d at 350.

Provocation is not an essential element of voluntary manslaughter that the prosecution needs to prove beyond a reasonable doubt. *Id.* (citing *People v. Moore*, 189 Mich. App 315, 320 (1991)). Manslaughter "is distinguished from murder by an absence of malice." *Id.*, quoting *People v. Scott,* 6 Mich. 287, 295 (1859) and *People v. Townes,* 391 Mich. 578, 589, 218 N.W.2d 136 (1974). It is thus the absence of malice, rather than "provocation" that is an element of manslaughter. The "presence of provocation and heat of passion," or temporary excitement of the kind that prevents the exercise of reason, are the kinds of evidence that mitigate malice and thus prove the lesser included offense of voluntary manslaughter. *People v. Mendoza*, 468 Mich. 527, 540 (2003)). The jury

14

may consider the lesser charge of "manslaughter" when there is "slight but sufficient" evidence of such provocation. *Moore*, 189 Mich. App. at 320.

The state court reviewed both the evidence that supported the elements necessary to prove second degree murder (with its necessary element of a finding that the defendant acted with malice) as well as the evidence showing the existence of provocation, which would undercut a finding that Petitioner acted with malice but would support a finding of involuntary manslaughter.

Regarding evidence of malice, the court of appeals pointed to Petitioner's "argument with Joyce, his knowledge that Joyce was dead outside on the porch, and his failure to seek the help of the police supports an inference that defendant killed Joyce and was conscious of his guilt." *Id.* In addition, in his own testimony, Petitioner did not dispute that he caused Joyce's death. *Id.* at *7. In addition, Malice was established both by use of a knife, which "alone is sufficient to support an inference of malice[,]" *id.* at *6 (citing *People v. Carines*, 460 Mich. 750, 760 (1999)), and by testimony supporting Petitioner's access to a phone and decision

not to call police, "even though he knew Joyce was either seriously injured or dead." *Id.*

As to the evidence that would also have supported a conviction for the lesser included offense of voluntary manslaughter—where evidence of provocation would allow a finding of not acting with malice—the court of appeals found that "slight but sufficient" evidence existed to support finding provocation, which, again, "mitigate[s] a homicide from murder to manslaughter." Evidence of provocation or acting in the heat of passion included that Petitioner "testified that he and Joyce frequently argued[,]" that they had a "heated relationship[,]" and others testified to their frequent fights. *Id.* at *7. Petitioner had known Joyce since 2009 and referred to her as "Hurricane Joyce" because of their frequent arguments. *Id.* at *3. In addition, witness Howze "confirmed" Petitioner had been "fighting with someone," and Petitioner told him it was Joyce. *Id.*

In addition to arguing that the evidence was insufficient to prove involuntary manslaughter, Petitioner contends that the evidence failed to prove the element of an absence of justification. Specifically, Petitioner argued that the evidence showed that he acted in self-defense. However, the proof of self-defense rested entirely on Petitioner's testimony, which

16

the jury was free to discredit. *Id*. at *8. And the jury had reason to question Petitioner's credibility because of his inconsistent statements. In his statement to police, unlike in his testimony at trial, Petitioner "denied any involvement in Joyce's death." *Id*. Even when he was asked about "physical altercations" with the victim, he never told anyone she had attacked him until trial. *Id*. Other evidence served to disprove Petitioner's assertion of self-defense and the need for deadly force, such as the disparate sizes of Petitioner and victim and his ability to push her off him and to get away from her. *Id*. at *7 (Joyce was "a 50-year-old, 105 pound woman.")

Petitioner disputes the state court's conclusion that sufficient evidence supported his conviction, arguing the state did not establish sufficient provocation or the "heat of passion." (Mich. Ct. App. Rec., ECF No. 9-14, PageID.794-95.) He also disagrees with the court's interpretation of the elements of voluntary manslaughter, asserting they include provocation. (Trav., ECF No. 10, PageID.962.)

Applying the "doubly deferential" standard of AEDPA, the Court finds the Michigan Court of Appeals did not unreasonably apply *Jackson v. Virginia* in rejecting this claim, because its factual findings were

neither "objectively unreasonable" nor "so insupportable" as to be irrational. *Coleman*, 566 U.S. at 651, 656. In the same claim arguing against his conviction of voluntary manslaughter, Petitioner highlights that the state court's application of voluntary manslaughter is contradicted by Michigan case law, which he argues states that "provocation is not an element of voluntary manslaughter." ECF No. 10, PageID.961 (citing *Moore*, 189 Mich. App. at 315). Petitioner, however, misunderstands the holding of *Moore*. It is correct that provocation" is not an essential element of voluntary manslaughter that the prosecution must prove beyond a reasonable doubt—absence of malice is—but provocation is a mitigating circumstance that, when it can be shown by "slight but sufficient" evidence, would allow the court to instruct the jury on involuntary manslaughter. *Moore*, 189 Mich. App. at 315. But even if Petitioner's view were accurate, habeas petitions that claim the "'state court misunderstood the substantive requirements of state law' . . . are beyond the reach of federal habeas courts." *Walter v. Kelly*, 653 F. App'x 378, 389–90 (6th Cir. 2016) (citing *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002)). Petitioner is not entitled to relief on this claim.

**B. Directed verdict of acquittal on second-degree murder charge**

After the prosecution rested on the third day of trial, defense counsel moved for a directed verdict on the first- and second-degree murder charges. (Trial Tr., 4/8/2014, ECF No. 9-9, PageID.555-56.) The motion was granted as to the first-degree charge, but the trial court ruled that the evidence presented could support an instruction to the jury on second-degree murder. . (*Id.* at 557.) The jury was instructed on both second-degree murder and voluntary manslaughter. (*Id.* at 641-42.)

Petitioner asserts the trial court erred in denying the motion as to the second-degree charge. The state court of appeals found the trial court's denial harmless because Petitioner was acquitted on that charge. *Richardson*, 2016 WL 3030860, at *4 (citing *People v. Graves*, 458 Mich. 476, 478–479 (1998)).

Numerous courts have held that this claim of error will not support habeas relief under these circumstances. "[A]ny error in the submission of [a] charge [is] harmless where the petitioner was acquitted of that charge." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 761 (E.D. Mich. 2004) (citing *King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001)). *Aldrich* analyzed an identical habeas challenge, the prejudicial effect of

19

submitting the second-degree murder charge to the jury after a motion

for directed verdict was denied, when the petitioner was acquitted of the

greater offense but convicted of manslaughter. 327 F. Supp. 2d at 747,

761. Noting the deference required by the AEDPA, the court held that

> [c]learly established Supreme Court law provides only that a
> defendant has a right not to be *convicted* except upon proof of
> every element of a crime beyond a reasonable doubt; the Court
> has never held that submission of charge upon which there is
> insufficient evidence violates a defendant's constitutional
> rights where the defendant is acquitted of that charge.

*Id.* at 761–62 (emphasis in original).

Petitioner's argument in support of this claim also relies on his

challenge to the sufficiency of the evidence. As explained in the previous

section, the state court's finding the evidence sufficient to support

Petitioner's conviction was not objectively unreasonable. Plaintiff has not

established he is entitled to relief on this issue.

## C. Trial court's refusal to instruct on involuntary manslaughter

Petitioner next argues the trial court erred when it failed to instruct

the jury on involuntary manslaughter. (ECF No. 9-14, PageID.806.) The

court of appeals held that Petitioner waived this issue when his attorney

accepted the jury instructions as given. *Richardson*, 2016 WL 3030860,

at *8. It also noted that were it to consider the question, the trial evidence

20

did not support an involuntary manslaughter instruction. *Id*. at n. 2. In his traverse reply, Petitioner argues "his trial counsel was ineffective for agreeing to the instructions given without requesting an involuntary manslaughter instruction," and his appellate attorney was ineffective for failing to raise the issue on appeal. (ECF No. 10, PageID.964.)

The Sixth Circuit rejected a similar claim raised by a habeas petitioner convicted of second-degree murder who asserted he was entitled to relief under both § 2254(d)(1) and § 2254(d)(2) for the trial court's refusal to instruct on involuntary manslaughter. *McMullan v. Booke*r, 761 F.3d 662, 666 (6th Cir. 2014). In that case, the due process claim failed because its petitioner "cannot point to any 'clearly established [f]ederal law' requiring a trial court to instruct the jury on a lesser included offense in a non-capital case." *Id*. (citing § 2254(d)(1)).

Put another way, "[t]he Supreme Court . . . has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case." *Id*. (citing *Beck v. Alabama*, 447 U.S. 625, 638 n. 14 (1980)). *Beck* held that it was "unconstitutional to impose the death penalty when a 'jury [is] not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would

have supported such a verdict.'" *Campbell v. Coyle*, 260 F.3d 531, 540 (6th Cir. 2001) (citing *Beck*, 447 U.S. at 627). Because "it was the risk of an unwarranted conviction where the death penalty is imposed that the Court found intolerable" in *Beck*, *Bagby v. Sowders*, 894 F.2d 792, 796 (6th Cir. 1990), outside that context "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell*, 260 F.3d at 540 (citing *Bagby*, 894 F.2d at 795-97).

No clearly established Federal law supports Petitioner's position, and in fact, Supreme Court (and Sixth Circuit) precedent is against him. Petitioner's argument that his trial and appellate attorneys were ineffective for not objecting or raising this issue must also fail, because attorneys cannot be found ineffective for choosing not to take futile actions, *Richardson v. Palmer*, 941 F.3d 838, 857 (6th Cir. 2019) (citation omitted), or not "rais[ing] . . . meritless arguments." *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999). Petitioner is not entitled to habeas relief on these issues.

## D. Ineffective assistance of trial counsel

Petitioner raises several other theories of ineffective assistance of counsel in his fourth and sixth arguments for relief. Habeas claims based

22

on ineffective assistance of counsel are evaluated under a "doubly deferential" standard. *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). The first layer is the familiar deficient performance plus prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). That is, a habeas petitioner must first show "that counsel's representation fell below an objective standard of reasonableness," and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Lafler*, 494 F. App'x 526, 532 (6th Cir. 2012) (per curiam) (quoting *Strickland*, 466 U.S. at 694)). *Strickland* requires a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance[,]" *Abby*, 742 F.3d at 226 (citing *Strickland*, 466 U.S. at 689). Further, *Strickland* mandates a presumption that the challenged action by counsel "might be considered sound trial strategy" under the circumstances. *Bell*, 535 U.S. at 698 (citing *Strickland*, 466 U.S. at 689). As noted in the previous section, failure to take futile actions or "raise

23

meritless issues" does not demonstrate constitutionally ineffective assistance. *Richardson*, 941 F.3d at 857; *Mapes*, 171 F.3d at 427.

AEDPA provides the second layer of deference to decisions by counsel by requiring habeas courts "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226 (citing *Burt*, 134 S. Ct. at 18). The question thus before the Court is whether the state court's application of the Strickland standard was unreasonable. *Harrington*, 562 U.S. at 101. This inquiry is distinct from asking whether defense counsel's performance fell below the *Strickland* standard. *Id*.

Petitioner asserts that he received ineffective assistance of counsel by his attorney's failure to cross-examine witnesses over the victim's violent nature and to object to a rebuttal witness's testimony and use of video. He also contends counsel failed to investigate and call potential defense witnesses, including Petitioner's employer, who would also have testified to the victim's violent reputation.

The court of appeals applied the *Strickland* standard and its presumptions. *Richardson*, 2016 WL 3030860, at *11. It held Petitioner had made no offer of proof that cross-examining the witnesses would have

24

resulted in testimony that the victim "was prone to physical violence." *Id*. at *13. The court pointed to evidence that counsel did investigate the victim's "relations . . . . [and] whereabouts and interactions on the day leading up to the incident[.]" *Id*. at *14. It speculated that counsel may have avoided raising the victim's violent nature to keep attention from Petitioner's own "violent history." *Id*.

On the issue of counsel's failure to introduce evidence that Petitioner had "no means of escape[,]" the appeals court suggested counsel may have relied on the prosecution's photos of the living room for the jury to make that inference. *Id*. at *12. As to Petitioner's employer, the court held the prospective witness's testimony "consisted solely of inadmissible hearsay[,]" and "[c]ounsel cannot be faulted for failing to present inadmissible evidence." *Id*. at *13. Further, because the employer was on the prosecution's witness list, Petitioner's attorney might reasonably have concluded his testimony would have been favorable to the prosecution. *Id*. The court declined to "second guess defense counsel's strategic decisions" regarding evidence and witnesses. *Id*. at *14.

Finally, Petitioner raises counsel's failure to object to the prosecution's rebuttal witness and use of video of Petitioner's interview

with police. In the video, Petitioner "did not mention that he had acted in self-defense or that Joyce had attacked him." *Id*. at *15. The evidence was offered to rebut Petitioner's trial testimony that he acted in self-defense. *Id*. The court of appeals found the testimony and video in rebuttal "were proper vehicles for the prosecutor's introduction of defendant's own statements[.]" Accordingly, any objection "would have been overruled[,]" and counsel was not ineffective for not objecting. *Id*. at *16.

Again, this Court may only ask whether the state court's application of *Strickland* was unreasonable, not whether counsel's performance failed to meet the *Strickland* standard. *Harrington*, 562 U.S. at 101. Having reviewed its analysis of each of Petitioner's challenges, the Court finds that the state court's conclusions were not unreasonable. Petitioner has not demonstrated that he received ineffective assistance of counsel.

## E. Sentencing errors

Petitioner's fifth issue raises three sentencing errors: that he should have been sentenced as a second habitual offender, not third, because his prior felonies arose out of the same conviction; the prosecutor should not have been permitted to amend the habitual offender notice at

sentencing; and costs and attorney fees should have been set aside. These claims lack merit and are non-cognizable on habeas review.

Neither the sentencing nor the re-sentencing transcript supports Petitioner's claim the prosecutor improperly amended the habitual offender notice enhancement at sentencing. At his first sentencing, the prosecutor cited "prior convictions for burglary and for assault with intent to murder." (Sent. Tr., ECF No. 9-11, PageID.672.) Petitioner asserted at the hearing, without support, that the burglary conviction was thrown out by the state court of appeals but made no other challenges to the habitual offender enhancement. (*Id*. at 676.)

On resentencing, Petitioner again claimed the burglary conviction was vacated on appeal. (ECF No. 9-13, PageID.694.) Although the claim was unproven, the prosecutor agreed not to count that conviction in the habitual offender enhancement. (*Id*. at PageID.698.) However, citing the earlier assault with intent to murder conviction as well as one for felony-firearm, the prosecutor stated that habitual third enhancement was still established. (*Id*.) No objections were made to a change in the predicate felonies for enhancement.

The court of appeals noted that Petitioner's charging document "provided notice that [he] would be sentenced as a third habitual offender if convicted." *Richardson*, 2016 WL 3030860, at \*17. It found no prejudice in the prosecutor's substitution of the burglary conviction for a felony-firearm conviction listed in Petitioner's Pretrial Sentence Investigation Report. *Id.* at \*17, The court also rejected Petitioner's ex post facto argument against treating the felony-firearm and assault with intent to murder convictions as two different offenses for purpose of enhancement. \*19.

Because Petitioner had not properly raised his indigency challenge to the imposition of costs with the trial court, the court of appeals rejected this claim as well. *Id.* at \*19-\*20.

In his traverse filing, Petitioner acknowledges "habeas corpus courts will not review state law issues concerning court costs and attorney fees." (ECF No. 10, PageID.969.) He is correct. This claim is not cognizable because it does not pertain to Petitioner's imprisonment and therefore falls outside the scope of federal habeas review. *See Michaels v. Hackel*, 491 F. App'x 670, 671 (6th Cir. 2012) (rejecting argument that petitioners could challenge fines imposed by the state courts under §

2254); *Washington v. McQuiggin*, 529 F. App'x 766, (6th Cir. 2013) (noting that "[i]n general, fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the 'in custody' requirement of a cognizable habeas claim").

As to Petitioner's habitual offender enhancement challenges, the Supreme Court "ha[s] repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. 62, 67–68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)). This Court is bound by the state court of appeals' interpretation resolving these habitual offender enhancement claims.

## F. Prosecutorial misconduct[3]

Petitioner next argues he was denied a fair trial when the prosecutor did not provide him exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* established the constitutional duty of the prosecution to turn over evidence in its

---

[3] In his traverse filing, Petitioner dropped a second theory of prosecutorial misconduct, that of "overcharging." (ECF No. 10, PageID.974.)

possession that is both favorable to the defendant and material to guilt or punishment. *Id*. at 87. Petitioner describes the "suppressed" evidence as records of his own jailhouse telephone calls and outstanding warrants against the victim for fighting or disorderly conduct which were pending at the time of her death. (Ct. App. Rec., ECF No. 9-14, PageID.832-33.) Petitioner argues the evidence would have raised doubts of his guilt. (*Id*.)

Under AEDPA, the Court's obligation "is limited to whether the [state court] unreasonably applied *Brady* to the facts of [the petitioner's] case." *Montgomery v. Bobby*, 654 F.3d 668, 677 (6th Cir. 2011) (citing *Williams*, 529 U.S. at 413). A successful claim under *Brady* must meet three criteria: the existence of evidence "'favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id*. at 678 (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

The prejudice requirement means a petitioner must establish "'a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Apanovitch v. Houk*, 466 F.3d 460, 475 (6th Cir. 2006) (citing *Strickler*,

527 U.S. at 289). "'The question is . . . whether in [the] absence [of the evidence] he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Id.* (citing *Strickler*, 527 U.S. at 289-90).

The Michigan Court of Appeals found no indication the prosecution had suppressed any evidence, nor that the purported warrants against the victim existed. *Richardson*, 2016 WL 3030860, at *10. Even if the court assumed the "outstanding arrest warrants existed and were possessed by the prosecution, defendant cannot establish a *Brady* violation because he has failed to prove that any of the allegedly suppressed evidence was 'exculpatory' or 'material.'" *Id.* "[T]he fact that Joyce was violent, while perhaps lending weight to defendant's self-defense theory, was not exculpatory." *Id.* Further, the jury heard evidence of the victim's violent nature through several witnesses. *Id.* at *11.

The court found Petitioner did not establish "his telephone conversations or . . . the arrest warrants negated an element of voluntary manslaughter or cast reasonable doubt on the prosecutor's theory of the case." *Id.* at *10. It thus concluded Petitioner had not shown that the

evidence he describes "would have had an effect on the outcome of [his] trial." *Id*. at *11.

In sum, the state court reasonably applied *Brady* to Petitioner's case. It evaluated whether the evidence in question was material and exculpatory, whether the prosecution had suppressed evidence, and whether Petitioner received a fair trial without the evidence sought. Petitioner is not entitled to habeas relief on this issue.

## G. Trial court's refusal to re-instruct jury on its request

Petitioner next contends the jury specifically requested the trial court re-instruct it on the manslaughter charge about two hours before it announced a verdict, but the court did not do so. The state court of appeals found no evidence within the record supporting Petitioner's claim. *Richardson*, 2016 WL 3030860, at *9.

This Court's review of the transcript supports the state court's findings. The only specific requests made by the jury appear to involve witness testimony (Petitioner's and witness Howze's), to which the trial court responded the jury should rely on its own recollections. (Trial Tr., 4/9/14, ECF No. 5-10, PageID.658-59.) The court directed the jury to return if it had additional, specific questions. (*Id*. at PageID.659.) In

response to the jury's general request for "12 sets of definitions and pages" the court responded that it would provide one copy. (*Id*.) The transcript does not otherwise indicate any requests, let alone for a specific instruction.

The state appellate court's finding on this issue was not objectively unreasonable. Petitioner is not entitled to relief on this issue.

## H. Abandoned claims on state law grounds

In his last two claims of error, Petitioner challenged Michigan law on orders of restitution as well as the use of a nearly twenty-five-year-old conviction to enhance his sentence under Michigan's habitual offender enhancement law. However, in his traverse reply, Petitioner abandoned both claims, noting they are state law issues not cognizable on federal habeas review, citing *Estelle v. McGuire*, 112 S. Ct. 475 (1991). (*See* ECF No. 10, PageID.981). Petitioner is correct: These issues do not entitle him to habeas relief. *See also Baker v. Barrett*, 16 F. Supp. 3d 815, 837 (E.D. Mich. 2014) (citations omitted) ("A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings.").

## IV.   CONCLUSION

Based upon the foregoing, **IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

The Court also **DECLINES** to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Nevertheless, if Petitioner decides to appeal this Court's decision, he may proceed *in forma pauperis* as an appeal could be taken in good faith.

**SO ORDERED**.

Dated: March 24, 2021          s/Terrence G. Berg
                               TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE